IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

William Adkins,                              :
                         Plaintiff           :        Civil Action 2:10-cv-030

            v.                               :        Judge Frost

Michael J. Astrue,                           :        Magistrate Judge Abel
Commissioner of Social Security,
                         Defendant           :

**REPORT AND RECOMMENDATION**

Plaintiff William Adkins brings this action under 42 U.S.C. §§405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security denying

his application for disability insurance benefits.  This matter is before the Magistrate

Judge for a report and recommendation on the administrative record and the parties'

merits briefs.

**Summary of Issues.** Plaintiff Adkins maintains that he is disabled due to back

and leg pain.  (R. 125.)  The administrative law judge found that Adkins could not

perform his previous work as a press operator, clamp truck driver, corrugator operator,

or off bearer, but found that he retains the ability to perform a reduced range of

sedentary work.  (R. 11–20.)

Plaintiff argues that the decision of the Commissioner denying benefits should be

reversed because:

- The administrative law judge failed to accord proper weight to the treating
  source medical opinions.

- The administrative law judge failed to properly analyze and misstated the severity of claimant's symptoms, and thus overstated claimant's residual functional capacity.

**Procedural History.**  Plaintiff filed his application for disability insurance bene-

fits on October 31, 2006, alleging that he became disabled on March 28, 2006, at age 41.

(R. 90-95.)  The application was denied initially and upon reconsideration.  Plaintiff

sought a *de novo* hearing before an administrative law judge.  On April 24, 2009, Admin-

istrative Law Judge Larry A. Temin held a video hearing which plaintiff, represented by

counsel, appeared and testified.  (R. 22-52.)  On May 15, 2009, administrative law judge

Temin issued a decision finding that Adkins was not disabled within the meaning of the

Act.  (R. 11-22.)  On June 11, 2009, the Appeals Council denied plaintiff's request for

review and adopted the administrative law judge's decision as the final decision of the

Commissioner of Social Security.  (R. 5-7.)

**Age, Education, and Work Experience.**   Plaintiff Adkins was born December 24,

1964.  (R. 121.)  He was 44 years old at the time of the administrative hearing.  He has a

high school education.  (R. 134.)  He had past work experience as a press operator,

clamp truck driver, corrugator operator, and off bearer.  (R.  30-32 and 126.) The

heaviest lifting required by these jobs ranged from 50 to 150 pounds.  (R. 30-33.)

**Plaintiff's Testimony.**  The administrative law judge summarized Adkins'

testimony as follows:

> The claimant testified that he saw his family doctor for follow up on
> weight loss, and was not currently seeing any other doctors.  He was
> prescribed a TENS unit for back pain in August 2008.  The claimant said

he was six feet tall and weight 330 pounds.  He had last worked as box shop operator for a corrugated box company, and had 15 years with the same employer.  He was on his feet all day at that job.

The claimant stopped working because of severe back pain, indicating that the pain was so severe that he was unable to concentrate.  The claimant had surgery in 2006, which helped, but the claimant currently had pain in a different area of the back.  He was told he needed more surgery, but his doctor did not think it would help.  He needed to lose weight, and had lost 45 pounds so far.  The claimant said that he lost his medical card in August 2007, and had just gotten it back, but was still not seeing the back doctor because he had been told there was no more that could be done for him.

The claimant said he had a previous back surgery that might have been in 2000.  He was taking Hydrocodone and Gabapentin for pain, and a muscle relaxer.  His medication made him drowsy.  The claimant took the Hydrocodone as needed, which was generally 3-4 times per week.  The claimant could lift 8-10 pounds.  He had problems after standing or walking for 15-20 minutes.  The claimant had to move around after sitting 15-20 minutes.  He could reach with his arms okay.  The claimant had problems sleeping, and got up after about 4 hours to go sit in a recliner.

At home, the claimant sat in a reclined position or spent time in bed.  He tried to do his laundry, and did not have to carry the clothes down because he had a laundry chute.  He drove, and could drive for 20-30 minutes before he had to get out of the car and walk around.  The claimant liked to fish but no longer did that very much because of pain.  He used to collect old cars and tractors, but could not do that any longer.  He sold his truck because it was a stick shift.  The claimant took care of his personal grooming.  Sometimes his wife helped him tie his shoes.

The claimant said that his pain was fairly well controlled with the TENS and his pain medications, if he went to bed and used those things.  He had bad days about 4 days a week.  He walked in the grocery store for exercise, but his wife did the actual shopping.  The claimant could only carry a gallon of milk from the driveway into the house.  The claimant did some cooking.  Doing dishes caused pain.  The claimant vacuumed a room at a time, then took a break.  He cut the grass by sitting on a riding mower for 15-20 minutes at a time.

3

(R. 14-15.)

**Medical Evidence of Record.**  The relevant medical evidence of record is summarized as follows:

**Albert Camma, M.D.**  In December 2000, Adkins underwent a micro surgical diskectomy at L4-5 due to a left footdrop secondary to a large herniated disc.  (R. 355.)

A March 30, 2006, MRI of Adkins' lumbar spine showed mild multi-level degenerative disc changes, and a left side disc bulge possibly causing radiculopathy. (R. 241-42.)

**James Chlovechok, M.D.**  Adkins treated with Dr. Chlovechok at Plus Sports Medicine in Cambridge, Ohio from May 2006 to February 2008.  (R. 216-22, 305-07.)  Dr. Chlovechok was the Medical Director of Plus Sports Medicine.  (R. 217.)  Initially, Adkins complaints included low back and left lower extremity pain.  Adkins reported that he cannot walk or work.  He spent most of his time lying on his right side.  He denied bowel or bladder complaints.  He stated sitting, standing, walking, and bending all make the pain worse, while lying on his right side seemed to ease it.  Examination revealed Adkins weighted 349 lbs.  Motor testing revealed diminished left hip flexion at 4/5 and was 5/5 otherwise.  DTRs were 2+ and symmetric at knees and ankles.  He was able to get up and ambulate, but tended to lean over and support his weight on a table or counter top.  Lumbar examination revealed only mild tenderness along the SI joint. Straight leg raise was positive on the left.  Dr. Chlovechok diagnosed a lumbar disc

herniation with left lower extremity radiculopathy.  Dr. Chlovechok noted that the area of focal disc bulge and neural encroachment was consistent with Adkins' pain and disability.  Dr. Chlovechok further noted that Adkins has lost some motor strength and has had his activities of daily living significantly impacted; he is now unable to work at all.  Dr. Chlovechok gave Adkins an ongoing work release until further notice.  Dr. Chlovechok recommended an epidural steroid injection.  (R. 221-22.)

Adkins received two injections in May 2006 and a third in September 2006.  (R. 223-31.)  In June 2006, Adkins reported that his lower back felt better, but he had begun to experience some mid-back pain.  He was able to walk normally; bend and touch his toes; walk on his heel and toes; and squat normally.  Dr. Chlovechok advised Adkins to continue physical therapy for two more weeks.  (R. 220.)  On June 23, 2006, Adkins reported increased pain, with radiation and tingling down his left lower extremity.  Dr. Chlovechok noted that Adkins would need surgery before he would be able to resume normal activities of daily living.  (R. 218.)

On September 13, 2006, Adkins complained of left thigh pain and weakness.  Adkins also reported a sensitive nerve causing pain and hyperesthesia along the left thigh between the inguinal crease and the knee, and that he could not tolerate even pants or a bed sheet contacting that area.  Dr. Chlovechok diagnosed lumbar degenerative disc disease, left L3 discectomy, status post L4–5 laminectomy, and left L3 radiculopathy.  Adkins was referred for nerve root blocks. (R. 217.)

Adkins saw Dr. Chlovechok on January 30, 2008, and reported that he had begun

5

to develop numbness and tingling in his left leg over the summer, and that the symptoms had steadily worsened.  He experienced low back pain which sometimes hurt "all the way up into his shoulder blades" He also reported that he had not come for treatment for a while because of a lack of insurance, but had been granted a medical card.  On examination, he walked with a normal gait, had normal motor strength, and good deep tendon reflexes at the knees bilaterally, but his ankle reflex on the left was diminished.  Straight leg raise was positive on the left.  Dr. Chlovechok ordered another MRI.  (R. 307.)

An MRI of the lumbar spine taken on February 20, 2008, showed postoperative changes at L4-5 without further pathology, and diffuse degenerative disc disease.  Left lateral L3-4 herniation into the left neural foramen causing mild to moderate stenosis, facet osteoarthropathy at L5-S1 with mild to moderate left and moderate to severe right neural foraminal stenosis.  (R. 310-11.)

Dr. Chlovechok reviewed the MRI with Adkins on February 22, 2008.  Dr. Chlovechok noted that the patient had "quite a bit of discomfort during his MRI and we had to add Valium to his pain medication to get him through this."  Dr. Chlovechok also noted that Adkins had applied for Social Security disability, and he opined that Adkins "should qualify for this. . . . I do not think that he is capable of any meaningful work." (R. 306.)

**Paul DeGenova, D.O.**

Dr. DeGenova performed a far lateral diskectomy on Adkins at L3-4 in July 2006.

6

(R. 210-13.) Adkins saw Dr. DeGenova in follow-up in August 2006, wherein he report-ed that his lower back pain had resolved, but was now experiencing pain down the left side of his leg. (R. 236.) Dr. DeGenova prescribed a nerve pain reliever, and released Adkins from work for another four weeks. *Id.* On August 23, 2006, Adkins reported the same left leg pain, so Dr. DeGenova scheduled Adkins for an EMG. (R. 235.) The EMG taken on September 5, 2006, showed possible acute left L3 radiculopathy, remote (healed) left L5 radiculopathy and non-specific L2-S1 spinal nerve irritations status post lumbar surgery x 2. (R. 215.)

On September 8, 2006, Dr. DeGenova increased Adkins' Neurontin and recom-mended nerve root blocks. Adkins was to remain off work. (R. 234.) Adkins received the injections in mid September. (R. 226.)

On October 13, 2006, Dr. DeGenova reported that the nerve block had "helped a lot ." He does still have pain, rating it a 2/10. He also reported that he had been laid off from work, and expressed concern that if he got back to work with any heavy type job he would need to have another back surgery. Dr. DeGenova explained that he did not like to see a 41 year old man "going complete disability," that he thought Adkins was "capable of doing some work," and that he thought Adkins "would be better off doing some sort of light duty job." (R. 233.)

In March 2008, Adkins stated that he thought the surgery "definitely helped," but also reported that he had been having back pain for about a year. Adkins also reported that his left leg is getting numb and tingling. He further reported that if he

7

were on his left leg for a prolonged period, it would drag.  Examination revealed a
negative straight leg raising test, reflexes "1/4 and symmetrical," negative FABER
testing, and intact manual muscle testing.  Dr. DeGenova referred Adkins to a pain
management clinic, and opined that he did not think Adkins was going to be able to
work at any capacity due to his back.  (R. 309.)

On January 21, 2009, Dr. DeGenova recounted Adkins' surgeries, physical
therapy, injections, and medications.  Dr. DeGenova concluded that "Because of these
objective medical findings, my clinical observations and the test data, I feel that he will
be unable to perform in a job sitting eight hours a day five days a week.  I feel that he is
completely and totally disabled from these conditions." (R. 348.)

Also on January 21, 2009, Dr. DeGenova completed a Physical Capacity Evalu-
ation.  Dr. DeGenova opined that Adkins could stand and walk for one hour total in an
eight-hour work day, and only one minute at a time.  Dr. DeGenova also opined that
Adkins could sit for two hours total, and only two minutes at a time.  According to Dr.
DeGenova, Adkins could lift no weight, but he could use his hands for both simple
grasping and fine manipulation.  Adkins could not use his hands for pushing and
pulling, nor could he use his feet for repetitive movements as in operating foot controls.
Dr. DeGenova found Adkins could not bend, squat, crawl, or climb stairs or ladders,
but did find him able to reach above shoulder level.  (R. 349–50.)

**Genesis Health Care (physical therapy)**  After the 2006 surgery, Adkins under-
went physical therapy from March 29, 2006 to November 13, 2006 for a total of 30 sess-

8

ions.  (R. 244-95.)  Adkins reported his pain as a 10/10 prior to his epidural nerve block and 2 or 3/10 following his epidural nerve block.  The treatment notes indicate that Adkins was doing a lot of work outside in the yard, lifting 25 pound bags of dog food, walking up and down a lot of steps, and was busy on the weekends.  When discharged, Adkins had met several long term goals, including "able to ascend/descend steps recip-rocally," "ability to dress [lower extremities] normally," and "report overall [decrease] in pain to 3 or lower." (R. 244.)  Another, "Pt. able to do 10 [straight leg raises] to 50°," was completed "[with] rests." *Id.*  Adkins did not meet the goal of performing a single leg stance on the left leg for 30 seconds.  *Id.*

**Craig Thompson, M.D.**  In January 2007, state agency reviewing physician, Dr. Thompson, opined that Adkins could lift and/or carry twenty pounds occasionally and ten pounds frequently; he could stand, walk and/or sit for about six hours in an eight-hour work day.  According to Dr. Thompson, Adkins' ability to push and/or pull was unlimited, other than claimed for lift/carry.  Adkins could never climb ladders/ropes/scaffolds; and could only occasionally kneel and crouch.  When explain-ing the evidence to support his opinion, Dr. Thompson cited Dr. DeGenova's October 2006 appointment: "F/U on 10/13/06–doing well, nerve block helped a lot, pain is nearly gone." Dr. Thompson also referred to the physical therapy goals sheet: "Clt. completed PT and met all goals."  (R. 297-304.)  Dr. Das, another state agency reviewing physician, affirmed Dr. Thompson's assessment in March 2007.  (R. 296.)

**Greg Siefert, M.D.**  In April 2008, after examining Adkins, Dr. Siefert diagnosed

post laminectomy syndrome, left lumbar radiculopathy with lateral herniation of the L3–4 disc in the left neural foramen and facet arthropathy.  (R. 317-19.)  His treatment plan was to administer lumbar epidural steroid injections at the L3–4 and L4–5 level.  *Id.* Dr. Siefert administered steroid injections in June and August, 2008. (R. 313-16.)  In August, Adkins was also scheduled for a TENS unit trial.  (R. 314.)

**Aline Daou, M.D.** The record reflects that Adkins treated with family practice physician, Dr. Aline Daou, from April 17, 2008 to December 16, 2008.  (R. 320-46.)  In October 2008,  Dr. Daou noted that the Tens unit was "helping some."(R. 333.)  In November 2008, Adkins complained that he experienced increased pain when he was active.  (R. 329.)  He requested medication for "pain/sleep" because the combination of Vicodin and Neurontin at bedtime, "wipes him out for 1½ day." *Id.*

In December 2008, Dr. Daou, opined that Adkins could stand for one hour total in an eight-hour work day, for 15 minutes at a time; he could walk for one hour total, and 25 minutes at a time; could sit for two hours total, for 30 minutes at a time. According to Dr. Daou, Adkins could lift 11-20 pounds; could lift small objects, such as a ½ gallon of milk or shoes occasionally; and could occasionally bend, crawl, and climb steps with a rail, but could never squat or climb ladders.  He could use his hands for simple grasping, but not for pushing and pulling and not for fine manipulation, and could not use his feet for repetitive movements as in operating foot controls.  He could reach above shoulder level.  Dr. Daou affirmed that Atkins' condition would likely deteriorate if placed under stress, particularly that of a job.  (R. 321-22.)

10

**Administrative Law Judge's Findings.**  The administrative law judge found

that:

1.  The claimant meets the insured status requirements of the Social Security
    Act through December 31, 2011.

2.  The claimant has not engaged in substantial gainful activity since March 28,
    2006, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: lumbosacral spine
    degenerative disc disease, status/post July 21, 2006 L3-4 surgery; and
    obesity (20 CFR 404.1520 (c)).

4.  The claimant does not have an impairment or combination of impairments
    that meets or medically equals one of the listed impairments in 20 CFR Part
    404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds the
    claimant has the residual functional capacity to perform sedentary work as
    defined in 20 CFR 404.1567(a).  Specifically, the claimant can perform the
    requirements of work activity except as follows: lift/carry/push/pull
    limited to 10 pounds occasionally and 5 pounds frequently; stand and/or
    walk limited to 2 hours in an eight-hour workday; stand and/or walk
    limited to 15 minutes at a time, then must be able to sit for 2-3 minutes; sit
    limited to 6 hours in an eight-hour workday; sit limited to 1 hour at a time,
    then must be able to stand for 2-3 minutes; only occasional stoop, kneel, and
    crouch; never crawl; never climb ladders/ropes/scaffolds; only occasionally
    climb ramps/stairs; never perform work requiring the forceful use of the
    left lower extremity; never use vibratory tools or power tools; never work at
    unprotected heights or around hazardous machinery.

6.  The claimant is unable to perform any past relevant work (20 CFR
    404.1565).

7.  The claimant was born on December 24, 1964 and was 41 years old, which is
    defined as a younger individual age 18-44, on the alleged disability onset
    date.  (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to
    communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 28, 2006 through the date of this decision (20 CFR 404.1520(g).

(R. 13-20.) (citation to record omitted).

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" *Id.* *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting

12

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge failed to accord proper weight to the treating source medical opinions.  According to Plaintiff, the administrative law judge violated SSRs ("Social Security Ruling") 96-2 and 96-6p.  The administrative law judge erred by finding that the opinions of Drs. Thompson and Das, the state agency reviewing phsycians,  were, "supported by the overall evidence," though he reduced the exertional limitations from light to sedentary.  The administrative law judge failed to givecontrolling weight to the Physical Capacity Evaluation's of treating sources, Drs. Daou and Dr. DeGenova.  Plaintiff further contends that the administrative law judge's failure to address Dr. Chloveckok's opinion compounded the error.

- The administrative law judge failed to properly analyze and misstated the severity of claimant's symptoms and thus overstated claimant's residual functional capacity. Plaintiff argues that the administrative law judge placed weight upon the positive outcomes of 2006 physical therapy, but repeated the erroneous assertion of Dr. Thompson, the state agency reviewer that Adkins met all physical therapy goals.  Plaintiff also argues that the administrative law judge erred by insisting upon equating retained limited fishing capacity

with capacity for competitive employment. The administrative law judge also dismissed "adverse side effects from medication and also disregarded Adkins' post-surgical treatment as "conservative measures … not indicative of total disability." Plaintiff relies on *Stennett v. Comm'r*, 476 F.Supp.2d 665, 671–72 (E.D. Mich. 2007), wherein the administrative law judge's analysis constituted a "selective and non-holistic assessment of the record."

**Analysis.**  Treating Doctor: Legal Standard. A treating doctor's opinion on the issue of disability is entitled to greater weight than that of a physician who has examined plaintiff on only one occasion or who has merely conducted a paper review of the medical evidence of record.  *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983).  The treating doctor has had the opportunity to observe his patient's impairments over the course of time.

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable." 42 U.S.C.  § 423 (d) (1) (A). Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971);

14

*Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975), 20 C.F.R. §§404.1513(b), (c), (d), 404.1526(b), and 404.1527.

The Commissioner's regulations provide that she will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. " 20 C.F.R. § 404.1527(d)(2). In determining the weight to assign a treating source's opinion, the Commissioner considers the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision. *Id.* Subject to these guidelines, the Commissioner is the one responsible for determining whether a claimant is disabled. 20 C.F.R. § 404.1527(e)(1).

Social Security Ruling 96-2p provides that "[c]ontrolling weight cannot be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." Consequently, the decision-maker must have "an understanding of the clinical signs and laboratory findings and

15

what they signify." *Id.* When the treating source's opinion "is well supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight . . . ." The Commissioner's regulations further provide that the longer a doctor has treated the claimant, the greater weight the Commissioner will give his or her medical opinion. When the doctor has treated the claimant long enough "to have obtained a longitudinal picture of your impairment, we will give the source's [opinion] more weight than we would give it if it were from a non-treating source." 20 C.F.R. §404.1527(d)(2)(I).

The Commissioner has issued a policy statement about how to assess treating sources' medical opinions. Social Security Ruling 96-2p. It emphasizes:

1. A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2. Controlling weight may be given only in appropriate circumstances to medical opinions, *i.e.*, opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3. Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

4. Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

5. The judgment whether a treating source's medical opinion is well supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

6. If a treating source's medical opinion is well-supported and not inconsistent

16

with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

7. A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator.

The case law is consistent with the principals set out in Social Security Ruling 96-2p.  A broad conclusory statement of a treating physician that his patient is disabled is not controlling. *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).  For the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis." *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); 20 C.F.R. § 404.1527(d)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004).  The Commissioner must make the final decision on the ultimate issue of disability. *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

Treating Doctor: Discussion.  The administrative law judge's decision fairly summarizes the medical record, including the office notes and reports from the treating physicians.  (R. 1–18.)  The administrative law judge began his discussion of Adkins'

17

residual functional capacity by stating, in part, that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-03p." (R. 14.) As to treating physicians, Dr. Daou and Dr. DeGenova, the administrative law judge accepted their opinions as establishing that Adkins has functionally limiting severe impairments, but their opinions were not accepted as accurate assessments of the extent of that limitation. (R. 17.) The administrative law judge based his assessment of Adkins' residual functional capacity for a limited range of sedentary work on the state agency reviewing physicians, Drs. Thompson and Das. The administrative law judge explained:

> Dr. DeGenova opined that the claimant was capable of working and could do a light duty job, after his 2006 back surgery. Dr. DeGenova then said in March 2008 that he did not think the claimant was capable of work (Exhibit 12F). He was more specific in a January 2009 letter, stating that the claimant could not do a job where he sat for 8 hours a day, 5 days a week (Exhibit 15F), which is not required by the claimant's residual functional capacity.
>
> The reviewing state agency physicians noted that the claimant completed physical therapy and met all goals after his 2006 surgery, that he reported significant pain reduction with epidural injection, and that clinically he had good strength, normal gait, equal reflexes, and slight left thigh weakness. They concluded that the medical evidence supported a functional capacity for light exertion with additional postural restrictions. The opinions of the state agency physicians are found to be supported by the overall evidence. However, the exertional limitations have been reduced from light to sedentary, and additional postural and environmental limitations and restrictions have been added to accommodate the current MRI findings of degenerative disc disease and mild to moderate stenosis, the current clinical evidence of slight left thigh weakness, as well as accommodating the claimant's pain complaints of back and left leg pain.

(R. 18, citation to record omitted.) The administrative law judge next summarized

18

Adkins' testimony about his pain and daily activities and asserted that his level of daily functioning was consistent with the capacity to perform a reduced range of jobs having sedentary exertional demands.  (R. 18-19.)  He did not expressly state his reasons for rejecting the treators' opinions on the issue of disability.

This assessment by the administrative law judge failed to apply many of the factors outlined in 20 C.F.R. § 404.1527(d)(2), including the length of the relationship; the nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision.

The administrative law judge described Dr. Chlovechok's February 2008 opinion, *see* R. 16, but did not evaluate or weigh this treating physician's opinion under any criteria mandated by the Regulations.  *See* Tr. 17-19.  This constituted error because the Regulations required the administrative law judge to provide "good reasons" for declining to apply controlling, or any, weight to Dr. Chlovechok's February 2008 opinion.  *See Wilson*, 378 F.3d at 544-45; *see also Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 746-47 (6th Cir. 2007). (Administrative law judge erred by not addressing treating psychologist's opinions).

The administrative law judge may not ignore evidence favorable to plaintiff.

19

Rather, he must articulate the evidence accepted or rejected when making a disability finding to enable the reviewing court to engage in meaningful judicial review. *See Hurst v. Secretary of HHS,* 753 F.2d 517, 519 (1985). *See also Bailey v. Commissioner of Social Sec.,* 173 F.3d 428 (6th Cir. 1999)(unpublished), 1999 W.L. 96920; *Morris v. Secretary of Health & Human Services,* 845 F.2d 326 (6th Cir. 1988) (unpublished),  1988 W.L. 34109. "[T]he administrative law judge must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000) (citing in part *Switzer v. Heckler,* 742 F.2d 382, 385-86 (7th Cir. 1984)).  When, as in this case, the administrative law judge fails to mention rejected evidence, the Court is unable to determine if significant probative evidence was not credited or simply ignored.

The Commissioner contends this Court may not set aside the administrative law judge's residual functional capacity finding given the conflicting medical opinions in this case.  The Court does not dispute that it is the administrative law judge's prerogative to resolve conflicts in the medical evidence.  However, when that conflict involves the opinions of treating physicians against those of nonexamining state agency physicians, the administrative law judge may not ignore the law of the Sixth Circuit and Social Security regulations requiring deference and greater weight to the opinions of treating physicians when resolving the conflict.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983); 20 C.F.R. § 404.1527(d)(2).

Consequently, the Magistrate Judge **RECOMMENDS** that this case be

**REMANDED** to permit the administrative law judge to properly evaluate the medical

source opinions in accordance with 20 C.F.R. § 404.1527(d)(2).[1]

If any party objects to this Report and Recommendation, that party may,

within fourteen (14) days, file and serve on all parties a motion for reconsideration by

the Court, specifically designating this Report and Recommendation, and the part

thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B);

Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the

DistrictJudge and waiver of the right to appeal the judgment of the District Court.

*Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.

1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir.

1989).

   s/Mark R. Abel       
United States Magistrate Judge

---

[1] In view of the above, the Court need not reach Adkins' second assignment of error that the administrative law judge erred in his credibility finding.